UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ECF CASE

------------------------------------------X

AKIVA TESSLER,

Plaintiff,

V.

DAVID A. PATERSON, as Governor of the
State of New York, DENNIS ROSEN, as
Chairman of the DIVISION OF ALCOHOLIC
BEVERAGE CONTROL, f/k/a NEW YORK STATE
LIQUOR AUTHORITY, in his individual and
official capacities, NOREEN HEALEY, as a
Commissioner of the DIVISION OF ALCOHOLIC
BEVERAGE CONTROL, in her individual and
and official capacities, JEANIQUE GREENE,
as a Commissioner of the DIVISION OF
ALCOHOLIC BEVERAGE CONTROL, in her
individual and official capacities, the
STATE OF NEW YORK, and the DIVISION OF
ALCOHOLIC BEVERAGE CONTROL,

Defendants.

------------------------------------------X

10 CIV 9313

Civil Action No.

JUDGE RAKOFF
COMPLAINT FOR
DAMAGES –
JURY DEMANDED


RECEIVED
DEC 14 2010
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff AKIVA TESSLER, complaining of the Defendants,
DAVID A. PATERSON ("Paterson"), Governor of the State of New
York, DENNIS ROSEN ("Rosen"), Chairman of the State Liquor
Authority, acting in his individual and official capacities,
NOREEN HEALEY ("Healey"), as a Commissioner of the State Liquor
Authority, acting in her individual and official capacities,
JEANIQUE GREENE ("Greene"), as a Commissioner of the State
Liquor Authority, acting in her individual and official
capacities, the STATE OF NEW YORK, and the Division of Alcoholic

1

Beverage Control, upon information and belief, alleges as follows:

## NATURE OF ACTION

1.  This is an action at law and for injunctive relief pursuant to 42 U.S.C. §1983 to redress violations of Plaintiff's due process and freedom of speech rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution by Defendants Rosen, Healey, and Greene, who are State actors.

2.  This is also an action at law pursuant to Common Law to redress Defendants' violations of Plaintiff's rights under common law through breach of contract, tortious interference with contractual relations, and intentional and/or negligent infliction of emotional distress.

3.  Plaintiff seeks injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs and disbursements pursuant to 42 U.S.C. §1983 and Common Law.

## JURISDICTION AND VENUE

4.  Jurisdiction is specifically conferred on the United States District Court by 28 U.S.C. §1331, this being an action

2

arising under the Constitution and Federal Law, and by 28 U.S.C. § 1343(a)(3), this being an action authorized by law to redress the deprivation, under color of statute, ordinance, regulation, custom or usage, of rights, privileges, and immunities secured to Plaintiff by the First, Fifth, and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

5.   Venue is proper because the events complained of herein occurred in Manhattan, New York (County of New York), which is within the Southern District of New York.

6.   At all times mentioned herein, Plaintiff Akiva Tessler resided in the State of New York within the jurisdiction of this Court.   During all times relevant and material to this case, Plaintiff Akiva Tessler was employed by Defendants State of New York and/or the New York State Division of Alcoholic Beverage Control (formerly known as the State Liquor Authority) as an Administrative Law Judge.

7.   Defendant Paterson, Governor of the State of New York, is sued herein in his official capacity, and, is, pursuant to N.Y. Constitution Article IV, §1, responsible for the administration of the Executive Branch of New York State by virtue of his position.

3

8.    Defendant STATE OF NEW YORK is the public employer of the Plaintiff and is organized into various agencies for the purposes of providing services to citizens of the State of New York, with its capital located in Albany County, New York.

9.    Defendant Division of Alcoholic Beverage Control is the State agency responsible for the issuing of licenses and permits for the manufacture, wholesale distribution and retail sale of all alcoholic beverages and ensuring that those licensed comply with the Alcoholic Beverage Control Law.    Pursuant to §270 of the Executive Law, the "head" of the Alcoholic Beverage Control Division is the State Liquor Authority which consists of three members known as Commissioners.    The Commissioners are appointed to their posts by the Governor of the State of New York.

10.    Defendant Rosen is one of the three Commissioners of the State Liquor Authority and he was the Commissioner designated to be Chairman by the Governor of the State of New York in August of 2009.

11.    Defendant Healey is one of the three Commissioners of the State Liquor Authority and she was appointed as Commissioner by the Governor of the State of New York in June of 2006.

4

12.     Defendant Greene is one of the three Commissioners of the State Liquor Authority and she was appointed as Commissioner by the Governor of the State of New York in June of 2008.

13.     During all times relevant and material to this case, Defendants STATE OF NEW YORK and/or DIVISION OF ALCOHOLIC BEVERAGE CONTROL were responsible for the actions of Defendants Paterson, Rosen, Healey and Greene under the common law principal agent/respondeat superior rule.

## FACTUAL ALLEGATIONS

14.     Plaintiff began working for the State of New York in 1984 as a Law Assistant, Trial Part (the position currently known as Court Attorney). Plaintiff then worked for the New York State Division of Housing & Community Renewal as Senior Attorney from 1986 to 1992. In 1992 Plaintiff joined the New York State Division of Alcoholic Beverage Control as an Administrative Law Judge (under the Civil Service title of Hearing Officer), and is currently employed in that capacity.

15.     Plaintiff is in the competitive class of the Civil Service and is a member of the Public Employees Federation ("PEF") union.

5

16.   Plaintiff's duties include the conduct of disciplinary hearings commenced by the Division of Alcoholic Beverage Control against its Licensees for alleged violations of the Alcoholic Beverage Control Law and/or State Liquor Authority Rules. After the conclusion of the hearings Plaintiff would issue a report setting forth his written Findings of Fact and Opinion as to whether the evidence sustained any of the charges brought against the Licensees and Plaintiff would designate which charges he had found sustained by the evidence. The report would subsequently be referred to the Commissioners of the State Liquor Authority for consideration at a meeting duly held by them.

17.   Most of the disciplinary hearings conducted by Plaintiff involved alleged violations of Alcoholic Beverage Control Law by State Liquor Authority Licensees for which police enforcement action was taken. Representing the Division of Alcoholic Beverage Control at these hearings were attorneys from the Division's Counsel's Office who would act as prosecutors during the hearings. In virtually all of the hearings involving the police, Counsel's Office attorneys would put in formal requests to the Police Departments in question for the appearance of Police Officers as witnesses at the disciplinary hearings. In those instances where Police Officers failed to appear for testimony, Counsel's Office attorneys would proceed

6

to prosecute charges against Licensees via hearing without witnesses.

18.   At such hearings, Counsel's Office attorneys would typically retrieve copies of alleged Police Department documents from their case files and offer them in evidence.   If the Licensees objected to the admission of these documents in evidence, Plaintiff, sitting as impartial arbiter of evidentiary disputes as per applicable law, regulation, and/or custom and practice, would make a determination as to whether or not there was foundation for the admission of documents in evidence.   In the event that foundation was lacking, Plaintiff would typically still allow the Division's attorneys to produce a Counsel's Office witness to give "custom and usage" testimony as to the practice of Counsel's Office in receiving, scanning, and filing Police Department documents.   In the event of such testimony, it was and is Plaintiff's usual practice to admit the documents in question into evidence and to give them weight as warranted.   In fact, on ten to twenty occasions over many years the Division's attorneys did produce such Counsel's Office witnesses (some of whom were Counsel's Office attorneys themselves, albeit not the ones that were conducting the hearings in question).   In the overwhelming majority of cases the Division's attorneys failed to avail themselves of this opportunity, and Plaintiff would not admit the documents in evidence.

19.    On July 12, 2007, Chief Administrative Law Judge
Stephen D. Kalinsky sent an email to all Division of Alcoholic
Beverage Control Administrative Law Judges directing them to
accept all documents offered into evidence by the State Liquor
Authority during hearings even if the Authority has failed to
lay a proper foundation for the introduction of the documents.
Mr. Kalinsky's email was sent after a Full Board meeting on June
27,   2007   during   which   Members   of   the   Authority   (the
Commissioners) returned two cases to the Hearing Bureau for the
purpose of having certain documents admitted into evidence.
Kalinsky stated in this email that his direction was made in
light  of  the  Commissioners'  decision  on  the  two  cases  in
question and the likelihood that other cases will be returned to
the Hearing Bureau to reopen.  A copy of the email in question
is attached to this Complaint as Exhibit #1.

20.    Kalinsky's direction to the Administrative Law Judges
was clearly made at the behest of the State Liquor Authority--
Commissioners (one of whom was Defendant Healey), it was never
rescinded by the State Liquor Authority, and it was in full
force and effect at all times during the pendency of the events
described herein.

8

21.   The direction in question was and is highly improper, being violative of the due process rights of licensees, including the right to cross-examine, and thus deprives licensees of their right to a fair trial.   Furthermore, this blatant denial of discretion that all American tribunals have always enjoyed, to reject unauthenticated documents for which no foundation has been laid, is in violation of the common law, the Governor's Executive Order #131, the Alcoholic Beverage Control Law, the Rules of the State Liquor Authority, and the Manual for Administrative Law Judges and Hearing Officers, the 2006 version of which was distributed to Plaintiff in the name of Governor Eliot Spitzer.

22.   Executive Order No. 131 (9 NYCRR § 4.131), issued by Governor Mario M. Cuomo in 1989 and continued by the subsequent administrations of Governors Pataki, Spitzer and Defendant Paterson, provides, in relevant parts, as follows:

WHEREAS, administrative adjudication must meet due process standards and should resolve disputes in a manner that is fair and appears fair to the public;
WHEREAS, the fairness of administrative adjudication and the appearance of fairness are particularly important when a state agency is a party to the administrative proceeding; and
WHEREAS, to assure expert, efficient, timely and fair adjudication, hearing officers who preside at administrative hearings should be knowledgeable, competent, impartial, objective and free from inappropriate influence…
NOW, THEREFORE, I, Mario M. Cuomo, Governor of the State of New York, by virtue of the authority vested in

**9**

me by the Constitution and Laws of the State of New
York, do hereby order as follows…
II. General Principles
A. Every agency that conducts adjudicatory proceedings
shall insure that such proceedings are impartial,
efficient, timely, expert and fair…
C. No agency shall consider whether a hearing officer's
rulings, decisions or other actions favor or disfavor
the agency or the State in establishing the hearing
officer's salary, promotion, benefits, working
conditions, case assignments or opportunities for
employment or promotion. The work of hearing officers
shall only be evaluated on the following general areas
of performance: competence, objectivity, fairness,
productivity, diligence and temperament.
D. No agency shall establish quotas or similar
expectations for any hearing officer that relate in any
way to whether the hearing officer's rulings, decisions
or other actions favor or disfavor the agency or the
State.
E. In any pending adjudication proceeding, the agency
may not order or otherwise direct a hearing officer to
make any finding of fact, to reach any conclusion of
law, or to make or recommend any specific disposition
of a charge, allegation, question or issue, except by
remand, reversal, or other decision on the record of
the proceeding; provided, however, that such provision
shall not preclude a supervisor from giving legal
advice or guidance to a hearing officer where the
supervisor determines that such advice or guidance is
appropriate to assure the quality standards of the
agency or to assure consistent or legally sound
decisions…

23.    A copy of Executive Order No. 131 is attached to this
Complaint as Exhibit #2.

24.    Said Executive Order was not rescinded at any time by
Defendant Patterson or any other prior Governor and was in full
force and effect at all times during the pendency of the events
described herein.

10

25.    Furthermore, §15 of the Alcoholic Beverage Control Law provides, in relevant part, as follows:

> The authority shall establish appropriate procedures to insure that hearing officers are shielded from ex parte communications with alleged violators and their attorneys and from other employees of the authority and shall take such other steps as it shall deem necessary and proper to shield its judicial processes from unwarranted and inappropriate communications and attempts to influence.

26.    In addition, the Rules of the State Liquor Authority provide, in relevant part, as follows:

> § 54.4 Conduct of hearings (a) Hearings shall be conducted by a member of the authority or any employee of the authority duly designated by the authority to hold hearings, who shall be known as the administrative law judge. The administrative law judge shall rule upon matters of procedure and introduction of evidence, and shall conduct the hearing in such manner as, in his discretion, will best serve the attainment of justice. Wherever the term *hearing officer* appears in the rules of the authority in connection with disciplinary proceedings, it shall be deemed to mean and to refer to the administrative law judge (9 NYCRR 54.4).

27.    Finally, the Manual for Administrative Law Judges and Hearing Officers, the 2006 version of which was distributed to the Plaintiff in the name of Governor Eliot Spitzer, provides, in relevant parts, that

> Non-testimonial proof, whether it be documentary evidence, real evidence, or demonstrative evidence, may be offered into evidence as exhibits. Whether the offered exhibits are admitted into evidence is subject to the ALJ's discretion… Whether an affidavit in lieu of the person making the affidavit testifying as a witness is admissible is subject to the discretion of

the ALJ.   The discretion should be exercised on the basis of the affidavit's reliability... Due concern should be given to its self-serving nature as well as the reason why the maker of the affidavit is not present, testifying as a witness... Authentication refers to the requirement that before any relevancy can be ascribed to an offer of evidence, it must be established that the evidence, be it documentary evidence, real evidence or demonstrative evidence, or a conversation, or a test result, is what the offer or the evidence claims it to be.   To illustrate, a purported letter of a party is not relevant unless it is properly shown that the party who signed the letter actually wrote the letter, nor is a telephone conversation offered to show knowledge on the part of a speaker relevant unless the person speaking is sufficiently identified.   In both cases, relevance is conditioned upon the fulfillment of a condition of fact, the former establishing the party as the author of the letter, in the latter the identification of the speaker.   Whether the offered evidence is what it purports to be can be established by other evidence sufficient to sustain a finding of its genuineness or by reason of a statutory procedure which may make specified evidence "authenticated" upon certain conditions being complied with... Government records are admissible by having a copy of the record certified in compliance with CPLR 4540, which certification attests to the authenticity of the copy of the record and that such copy is an accurate copy of the original record... Generally, documentary evidence, such as letters and records, can be authenticated by testimony from a witness who saw the document executed or is familiar with the signature or handwriting on the document, or by expert testimony...

28.   This Manual was not rescinded subsequent to issuance and was in full force and effect during all events described herein.

29.   Due to the highly improper nature of Kalinsky's direction to the Administrative Law Judges, Plaintiff in effect

declined to follow it.    Although subsequent to Kalinsky's
direction Plaintiff did mark as exhibits documents for which no
foundation was established, Plaintiff in all cases immediately
stated on the record during the hearings that these exhibits
would not be given any weight.    Plaintiff would subsequently
adhere to this ruling in his written findings of fact and
opinion.    The written findings and opinions of the Plaintiff
would always explain the reasons for Plaintiff's refusal to give
any weight to the documents in question.

    30.    In January of 2009, the Commissioners of the State
Liquor Authority requested the Plaintiff to "explain why no
weight was given to copies of documents".    Plaintiff responded
to the request by basically repeating the explanations that were
set forth in Plaintiff's written Findings of Fact and Opinion.
Copies of the emails requesting the explanation and Plaintiff's
response to them are attached to this Complaint as Exhibit #3.

    31.    Upon information and belief, on or about May 25,
2010, at his one and only meeting with the entire Counsel's
Office staff, Defendant Rosen singled out Plaintiff's
evidentiary rulings for harsh criticism.

    32.    On September 22, 2010, at a regularly scheduled State
Liquor Authority Full Board Meeting, the Commissioners of the

**13**

Authority directed Plaintiff to submit a memo setting forth the statutory or case law authority for requiring foundation to be established for admission of alleged police documents into evidence in two decisions (Milestone Deli Market Corp. and Hafedh A Al Shugaa) written by Plaintiff.   In addition, Plaintiff was requested to "distinguish Gray v. Adduci".   Copies of the two decisions in question are attached to this Complaint as Exhibit #4.

33.   Defendant Commissioner Healey stated the following at said meeting, a video of which is posted on the Division's website   at   http://abc.state.ny.us/live-and-archived-media (commencing   at   4hrs:31mins:30secs   of   the   video   of   9/22/10 Meeting):

> I - one charge was not sustained.   I would like this ALJ to write a memo to the Board due October 6th what statute or what case law supports his proposition that in order for a police report to be admitted into evidence a foundation must be laid.   Why does he apply trial   rules   of   evidence   to   an   administrative proceeding?   What's his legal authority for that? And I would like him to distinguish Grey v. Adduci or Alducci, however you say it. Because Parole, Probation, you can suspend a teacher, you can suspend a child from school, you can suspend somebody's driver's license, you can suspend cab driver's license, administrative proceeding all with hearsay.

34.   Defendant Rosen at this point chimed in with the following:

> and Social Services proceedings as well.

**14**

35.   Defendant Healey then continued:

Social Services proceedings... Foundation and chain of
custody, why is that?...  Due October 6th.

36.   On October 4, 2010 Plaintiff submitted a four
page memo to the Board fully explaining his rulings and
citing case law and the Manual for Administrative Law Judges
and Hearing Officers.  A copy of the memo is attached to
this Complaint as Exhibit #5.

37.   At the Full Board Meeting on October 6, 2010
Defendant Healey addressed the Plaintiff's memo as follows
(commencing at 3hrs:43mins:20secs of the video of 10/6/10
Meeting):

Hmm, I asked for a memo of law with case law to support
his legal proposition and he the ALJ really didn't do
it either he didn't understand or he didn't want to do
it.   Instead he spends a lot of his time criticizing
the State Liquor Authority prosecutor and his legal
argument was convoluted.  It was just a waste of time.
He has a problem with one of the prosecutors, he should
speak to his supervisor who is Mike Jones, who would
then  speak  to  the  prosecutor's  supervisor.
(unintelligible) has nothing to do with the Board or
what the request was.

38.   The Authority's secretary at this point asked
Defendant Healey if the Plaintiff should submit another memo
to the Board, and her response was the following:

> no, it's a waste of time; same thing, same
> shpiel, just dismiss the charges. I would like to
> say to the ALJ: you do have discretion but you
> cannot abuse your discretion, you have to have a
> reasonable exercise of discretion in your rulings.

39. A fair reading of Plaintiff's memo discloses that Defendant Healey intentionally and maliciously misrepresented the memo. It must be noted, however, that all three Commissioners, including Defendant Healey, went along with Plaintiff's post-hearing determinations and did not reverse them. However, it must also be noted that the other two Commissioners did not challenge Defendant Healey's malicious misrepresentation of the memo.

40. On October 28, 2010 Defendant Patterson announced layoffs of 898 State employees, breaking a promise that he made to the unions (including the Plaintiff's union PEF) that no layoffs would occur for the remainder of his term. In exchange for Patterson's promise the unions did not oppose a new, less-generous pension tier for new hires.

41. On November 18, 2010 Plaintiff and the only other two unionized, competitive Civil Service Administrative Law Judges/Hearing Officers at the New York State Division of Alcoholic Beverage Control were notified by Human Resources Director Daniel J. Cunningham that the Division of Alcoholic

Beverage Control "identified your title for reduction" and that Plaintiff's "permanent Hearing Officer position has been targeted for abolishment, with the resulting change in employment status being effective beginning of business January 1, 2011".

42.    Said notice further stated that in accordance with the Civil Service Law, Plaintiff has the right to be offered reassignment to "a temporary hourly Hearing Officer position... Information regarding the characteristics of that position is attached for your information".   The attached "Information on Hearing Officer (Hourly) Positions" is a half-page statement that is unsigned, undated, and has no name of any individual or office on it.   The "Information" basically states that the "Positions" are ineligible to receive health benefits, that they are Time and Attendance ineligible and cannot earn leave accruals, that the "Position incumbents" cannot work more than 18 hours per week, that the "Position incumbents" are not guaranteed 18 hours of work per week, that there may be times when an incumbent will have no hours or less than 18 hours in a given week, and that the hourly pay will be $36.58.   Copies of the notice and attached "Information" are attached to this Complaint as Exhibit #6.

43.   On December 9, 2010 Plaintiff was handed his final notice by Human Resources Director Daniel J. Cunningham. Cunningham's letter stated that

> On behalf of Dennis Rosen, Chairman of the Division of Alcoholic Beverage Control/State Liquor Authority, it is with sincere regret that I must inform you that, **due to the serious nature of the fiscal issues facing the State of New York**, your position of Hearing Officer will be abolished resulting in your separation from the agency effective beginning of business January 1, 2011 (emphasis supplied).

44.   However, on December 6, 2010, only three days earlier, Defendant Rosen gave the following testimony before a New York State Assembly Committee (Copies of the December 9th notice and the transcript of Rosen's testimony are attached to this Complaint as Exhibit #7):

> In closing, I should point out that the SLA is the third highest revenue generating agency in the state. The revenue we raise exceeds our expenditures by about $35 million annually.   In addition, at the conclusion of fiscal year 2009-2010, we spent almost $1 million less than our budget provided for, and projections for 2010-2011 indicate that that will most likely be repeated (p. 4, ¶ 3 of Rosen's testimony).

45.   Upon information and belief, no workforce reductions were required of the State Liquor Authority by the Governor. The "workforce reduction" of the Plaintiff is nothing more than

**18**

a termination or dismissal for "cause" - the evidentiary rulings of the Plaintiff that the Defendants did not like.

46. Through his membership in PEF, Plaintiff had a contract of employment with Defendant State of New York.

47. Under Article 33 of the 2007-2011 Agreement ("Agreement") between Defendant State of New York and PEF, Plaintiff could only be terminated for just cause upon notice of discipline, a subsequent disciplinary grievance, and an eventual hearing before the disciplinary arbitrator. The burden of proof that discipline is for just cause rests with the employer.

48. Furthermore, Article 22 of the Agreement provides that there shall be no loss of present employment by permanent employees as a result of the State's exercise of its rights to contract out for goods and services [§22.1(a)].

49. §22.1(b) of the Agreement further provides that "Notwithstanding the provisions of Article 22.1(a), permanent employees affected by the State's exercise of its right to contract out for goods and services will receive 60 days written notice of intended separation and will be offered a redeployment option as provided for in Appendix VI(A)…".

**19**

50.   The State Liquor Authority has in effect privatized the Hearing Bureau of the State Liquor Authority without complying with the collective bargaining agreement between PEF and the State.

51.   The State Liquor Authority's "hourly" Hearing Officer scheme, without any guarantee of hours, is designed to reward those Administrative Law Judges who decide cases in the manner approved by the Commissioners, and to punish those who decide to follow the Manual to Administrative Law Judges and other similar requirements of law.

52.   It is a blatant attempt by the State Liquor Authority to create a "Kangaroo Court" of "hourly" Hearing Officers.

53.   Thus, the State Liquor Authority has illegally and impermissibly used Defendant Patterson's workforce reduction layoffs as a pretext to fire its three unionized, competitive Civil Service permanent Administrative Law Judges and replace them with several "independent contractors" who have no contract.  The State Liquor Authority does not even have to fire these ultimate "at will" independent contractors – it can simply refuse to give them any hearings to adjudicate.  In fact, since 2006, when the Authority started hiring these "hourly" Hearing Officers, it has done just that on many occasions.  This is a

20

shameful sham perpetrated by the State Liquor Authority against its three Administrative Law Judges, the Civil Service system, the Collective Bargaining Agreement between the State and the Plaintiff's union, and ultimately the State Liquor Authority Licensees and the public.

54.    If the State Liquor Authority wished to effectuate a workforce reduction, it could truly have abolished all of its eight Attorney positions.  The Authority would not have needed to replace them with any "hourly" attorneys - they are not essential to State Liquor Authority operations.   On the other hand, State Liquor Authority Licensees are constitutionally entitled to due process, and therefore hearings, and therefore Administrative Law Judges/Hearing Officers.    Thus, the State Liquor Authority has targeted just three of its total of approximately one hundred and thirty employees (less than three percent) for a "workforce reduction", and it has targeted arguably its only essential employees - its entire Hearing Bureau.

55.    Both the Alcoholic Beverage Control Law and the Rules of the State Liquor Authority (9 NYCRR 54.4, supra) acknowledge the essential role of Administrative Law Judges to State Liquor Authority operations.  §15 of the Alcoholic Beverage Control Law provides, in relevant parts, as follows:

**21**

The authority shall have power to appoint any necessary deputies, counsels, assistants, investigators, and other employees within the limits provided by appropriation... The counsel, secretary, chief executive officer, assistant chief executive officers, confidential secretaries to commissioners and deputies shall be in the exempt class of the civil service. **The other assistants, investigators and employees of the authority shall all be in the competitive class of the civil service...** The authority shall establish appropriate procedures to insure that hearing officers are shielded from ex parte communications with alleged violators and their attorneys and from other employees of the authority and shall take such other steps as it shall deem necessary and proper to shield its judicial processes from unwarranted and inappropriate communications and attempts to influence (emphasis supplied).

56.  Since any determination by the Department of Civil Service classifying the "hourly" Hearing Officer positions that are not entitled to any hours as competitive civil service would be a sick perversion of the Civil Service Law, the hiring of the "hourly" Hearing Officer "employees" herein is clearly ultra vires and illegal as per the Alcoholic Beverage Control Law.

## AS AND FOR A FIRST CAUSE OF ACTION FOR VIOLATION OF PROCEDURAL DUE PROCESS

57.  Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "56" as if each were fully set forth herein.

58.  While acting under color of State Law, the Defendants violated Plaintiff's right to procedural due process under the

Fifth   and   Fourteenth   Amendments   to   the   United   States
Constitution by terminating Plaintiff's employment for "cause"
without   charging   Plaintiff,   without   providing   Plaintiff   an
opportunity to respond to charges against him, and without a
hearing.

59.   By depriving Plaintiff of a property interest in his
employment as an Administrative Law Judge/Hearing Officer and
violating Plaintiff's due process rights under the Fifth and
Fourteenth Amendments to the United States Constitution while
acting under color of State law, the Defendants violated 42
U.S.C. § 1983.

60.   As a direct result of Defendants' actions, Plaintiff
has suffered damages.

### AS AND FOR A SECOND CAUSE OF ACTION FOR VIOLATION OF SUBSTANTIVE DUE PROCESS

61.   Plaintiff repeats and realleges each and every
allegation contained in paragraphs "1" through "60" as if each
were fully set forth herein.

62.   While acting under color of State Law, the Defendants
violated Plaintiff's right to substantive due process under the

**23**

Fifth   and   Fourteenth   Amendments   to   the   United   States
Constitution by terminating Plaintiff's employment for "cause"
without  charging  Plaintiff,  without  providing  Plaintiff  an
opportunity to respond to charges against him, and without a
hearing.   The Defendants' actions in terminating Plaintiff under
the   false   pretext   of   a   "workforce   reduction"   were   so
outrageously  arbitrary  as  to  constitute  a  gross  abuse  of
governmental authority.

63.   As a direct result of Defendants' actions, Plaintiff
has suffered damages.

## AS AND FOR A THIRD CAUSE OF ACTION FOR FIRST AMENDMENT RETALIATION

64.   Plaintiff  repeats  and  realleges  each  and  every
allegation contained in paragraphs "1" through "63" as if each
were fully set forth herein.

65.   Plaintiff has an interest as a citizen in the lawful
disposition of disciplinary proceedings against Licensees of the
Division of Alcoholic Beverage Control.

66.   The  Defendants  have  violated  Plaintiff's  right  to
freedom of speech under the First Amendment to the United States
Constitution as enforced by 42 U.S.C. § 1983.

**24**

67.    By their actions set forth above, the Defendants retaliated against Plaintiff for his refusal to follow unlawful instructions, all in violation of the First and Fourteenth Amendments of the United States Constitution.

68.    Plaintiff's exercise of his First Amendment rights has been chilled (to say the least) by the Defendants' actions.

69.    As a direct result of Defendants' actions, Plaintiff has suffered damages.

**AS AND FOR A FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT**

70.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "69" as if each were fully set forth herein.

71.    Plaintiff, through his membership in PEF, had a contract of employment with the Defendant State of New York.

72.    Defendant State of New York breached the contract that it had with Plaintiff's union, PEF, by terminating Plaintiff for cause without charging Plaintiff, without providing Plaintiff an

opportunity to respond to charges against him, and without a hearing.

73. Plaintiff was a beneficiary of this contract.

74. As a direct result of Defendants' actions, Plaintiff has suffered damages.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACT

75. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "74" as if each were fully set forth herein.

76. Defendants Rosen, Healey, and Greene knew, and/or reasonably should have known, that Plaintiff was a beneficiary of said contract of employment and intentionally and arbitrarily procured the breach of that contract by terminating Plaintiff for "cause" without charging Plaintiff, without providing Plaintiff an opportunity to respond to charges against him, and without a hearing.

77. In terminating Plaintiff for "cause" without a hearing Defendants Rosen, Healey, and Greene acted in bad faith and

purely out of self-interest, animosity, and vindictiveness against Plaintiff, thus exceeding the limits of their authority. With reference to the foregoing, their actions were neither justified nor taken in the interest of the State of New York and/or the New York State Division of Alcoholic Beverage Control.

78. Defendants Rosen, Healey, and Greene knew that they were acting improperly, illegally, and maliciously in terminating Plaintiff for "cause" without charging Plaintiff, without providing Plaintiff an opportunity to respond to charges against him, and without a hearing.

79. Defendants Rosen, Healey, and Greene were not parties to the Agreement between the State of New York and PEF. In maliciously terminating Plaintiff, Defendants Rosen, Healey, and Greene intentionally and tortiously induced the State of New York to breach its contract with PEF.

80. The State of New York would not have breached its Agreement with PEF if not for the actions of Defendants Rosen, Healey, and Greene, and the latter Defendants are thereby are liable to Plaintiff for the Common Law tort of Tortious Interference with Contractual Relations.

81.   As a direct result of Defendants' actions, Plaintiff has suffered damages.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

82.   Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "81" as if each were fully set forth herein.

83.   Defendants' actions, as set forth above, had no legitimate purpose and were undertaken solely to advance a personal agenda.

84.   Defendants' actions were intended to cause Plaintiff extreme emotional distress, or in the alternative, Defendants completely disregarded the substantial probability that their behavior would cause Plaintiff extreme emotional distress.

85.   Defendants' extreme and outrageous conduct, as set forth herein, was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and should be regarded as atrocious and utterly intolerable in a civilized society.

86.   As a direct result of Defendants' extreme and outrageous conduct, as set forth herein, Plaintiff has suffered

**28**

extreme emotional distress, depression, trauma, nervousness, and anxiety.

## JURY DEMAND

87.   Plaintiff demands a jury trial for all issues triable by jury in this matter.

**WHEREFORE,** Plaintiff demands judgment enjoining and permanently restraining Defendants from abolishing Plaintiff's permanent Hearing Officer position, together with money damages on all causes of action in an amount to be determined by the trier of fact herein, together with punitive damages in an amount to be determined by the trier of fact herein, together with interest, costs, and attorneys fees incurred in the prosecution of this action, and granting Plaintiff such other and further relief as this Court may deem just, proper and equitable in the circumstances.

Dated:   Staten Island, New York
         December 10, 2010

                        Yours, etc.


                        AKIVA TESSLER, ESQ. (AT3437)
                        Plaintiff Pro Se
                        453 Fanning Street
                        Staten Island, N.Y. 10314
                        (718) 982-8505

29